## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

BART FLEET, as Personal Representative
of the Estate of CALVIN WILKS, JR.,
deceased,

               Plaintiff,

v.                                        Case No.:

BRANDON HARDAWAY, in his
individual and official capacities, as
City of Crestview's Police Officer;
WILLIAM JOHNS, II, in his
individual and official capacities, as
City of Crestview's Police Officer;
EVAN REYNOLDS, in his
individual and official capacities, as
City of Crestview's Police Officer;
and STEPHEN MCCOSKER, in his
individual, supervisory capacity, and
as City of Crestview's Chief of
Police; and THE CITY OF
CRESTVIEW, FLORIDA, a political
subdivision of the state of Florida,

               Defendants.

_____/



## <u>COMPLAINT</u>

    Plaintiff, BART FLEET, as Personal Representative of the Estate of CALVIN

WILKS, JR.,   deceased, by and through his undersigned attorneys, sues the

Defendants, BRANDON HARDAWAY, in his individual and official capacities, as

City of Crestview's Police Officer; WILLIAM JOHNS, in his individual and official

capacities, as City of Crestview's Police Officer; EVAN REYNOLDS, in his individual and official capacities, as City of Crestview's Police Officer; STEPHEN MCCOSKER, in his individual, supervisory individual, and his official capacity, as City of Crestview's Chief of Police; and THE CITY OF CRESTVIEW, FLORIDA, a political subdivision of the State of Florida, defendants, and alleges as follows:

**INTRODUCTION
JURISDICTION AND VENUE
AND PARTIES**

1.      This is an action for damages and attorney's fees arising under 42 U.S.C. §§1983 and 1988, and for damages arising under the common law and statutory law of the State of Florida.

2.      This action makes issue and alleges a violation of the United States Constitution, including, but not limited to, a violation of the Fourth and Fourteenth Amendments which make illegal the unnecessary and excessive use of force against persons prior to and during pre-trial detainment.

3.      This Honorable Court has original jurisdiction of this action and the parties pursuant to 42 U.S.C.  §§  1983 and 1988; the U.S. Constitution; the provisions in 28 U.S.C. §§ 1331 and 1343, *et. seq.*; and the ancillary jurisdiction of this Court is pursuant to 29 U.S.C. § 1367 for all state law claims.  State law claims are brought under the provisions of Florida Statutes § 768.16 of the Florida Wrongful

Death Act and Florida Statute § 768.28. Such claims arise from a common nucleus of operative fact with constitutional violation(s) actionable through 42 U.S.C. § 1983 as set forth above.

4.      Venue is posited in United States District Court, Northern District of Florida, Pensacola Division, pursuant to 28 U.S.C. § 1391 and N.D. Fla.Loc.R. 3.01(A)(2); and by virtue of the status of each party as more fully described below.

5.      The acts, omissions and practices described hereafter all occurred within the jurisdiction of the United States District Court in and for the Northern District of Florida.

6.      Plaintiff, BART FLEET, is the Personal Representative of the Estate of CALVIN WILKS, JR., deceased (Appointment of Personal Representative and Letters of Administration, attached hereto as Composite Exhibit "A" and made part hereof).

7.      The beneficiaries of this action and their relationship to Decedent, CALVIN WILKS, JR., include, but are not limited to, the following:

      a.      C.W. as: 1) as minor child of the deceased, for his loss of the comfort, companionship, protection, and society of his father, and for any other damages recoverable in equity or in law; the loss has caused and will continue to cause C.W. severe mental and

emotional pain and suffering;

b.    CA.W. as: 1) as minor child of the deceased, individually as minor child of the deceased, for his loss of the comfort, companionship, protection, and society of his father, and for any other damages recoverable in equity or in law; the loss has caused and will continue to cause CA.W. severe mental and emotional pain and suffering;

c.    SE.W. as: 1) as minor child of the deceased, for her loss of the comfort, companionship, protection, and society of her father, and for any other damages recoverable in equity or in law; the loss has caused and will continue to cause SE.W. severe mental and emotional pain and suffering;

d.    SA.W. as: 1) as minor child of the deceased, individually as minor child of the deceased, for her loss of the comfort, companionship, protection, and society of her father, and for any other damages recoverable in equity or in law; the loss has caused and will continue to cause SA.W. severe mental and emotional pain and suffering;

e.    M.S.W. as: 1) as minor child of the deceased, individually as

minor child of the deceased, for her loss of the comfort, companionship, protection, and society of her father, and for any other damages recoverable in equity or in law; the loss has caused and will continue to cause M.S.W. severe mental and emotional pain and suffering; and

f.    THE ESTATE OF CALVIN WILKS, JR., for the loss of net accumulations and funeral and other expenses.

8.    Plaintiff, BART FLEET,  the Personal Representative of the Estate of CALVIN WILKS, JR., brings this action by and through Florida's Wrongful Death and Survival Statutes, respectively, seeking all available damages properly recoverable on behalf of the estate as well as all available damages properly recoverable for the decedent's personal injuries; which include the survivorship claims of Calvin Wilks, Jr.'s minor children: C.W., CA.W., SE.W., SA.W. and M.S.W.; who are his beneficiaries for the purposes of The Florida Wrongful Death Act and Florida's Survival Statute. *See, Fla. Stat.* §§ 786.19; 46.021. Plaintiff also seeks punitive damages (where identified below), costs and expenses, and reasonable attorney's fees pursuant to 42 U.S.C. § 1983, more specifically described below. Fee entitlement is alleged pursuant to 42 U.S.C. § 1988.

9.    At all times material hereto, the acts, omissions, practices and other

conduct of each Defendant were committed under color of state or local law.

10.     At all times material hereto, Defendants BRANDON HARDAWAY, WILLIAM JOHNS, EVAN REYNOLDS, STEPHEN MCCOSKER, and the CITY OF CRESTVIEW, FLORIDA were and are "persons" subject to suit under 42 U.S.C. § 1983.

11.     At all times material hereto, Defendants BRANDON HARDAWAY ("Hardaway"), WILLIAM JOHNS ("Johns") and EVAN REYNOLDS ("Reynolds"), were police officers appointed by Defendant STEPHEN MCCOSKER, acting within the course and scope of said employment with the City of Crestview, Florida.

12.     At all times material hereto, Defendant STEPHEN MCCOSKER was the Chief of the City of Crestview, Florida's Police Department, and through his agents and employees, was responsible for the proper and efficient enforcement of the laws, regulations, policies, practices and procedures of such political entity; the laws and regulations of the State of Florida; and the Constitution of the United States. He is sued into his individual, supervisory, and in his official capacity.

13.     At all times material hereto, Plaintiff BART FLEET has complied with all conditions precedent to bringing this action, including, but not limited to, compliance with Florida Statutes, §§ 766 and 768.28.

14.     Plaintiff BART FLEET has retained the services of the undersigned

attorneys and is obligated to pay a reasonable attorney's fee for such services in pursuing the claims asserted herein.

## FACTS APPLICABLE TO ALL COUNTS

15.     On or about October 14, 2021 at approximately 2:21am, Calvin Wilks, Jr., age 40, was residing at 354 Hospital Drive, a two-story complex in Crestview, Okaloosa County, Florida ("scene").

16.     On or about October 14, 2021, at approximately, 2:16am, Hardaway arrived at the scene in reference/response to a disturbance call.

17.     On or about October 14, 2021, at approximately, 2:21am, Johns arrived at the scene in reference/response to a disturbance call.

18.     Upon arrival at the scene, Johns made contact with Officer Hardaway, who had already arrived, and proceeded to the upstairs apartment occupied Calvin Wilks, Jr., who was alone in the residence.

19.     On or about October 14, 2021, at approximately, 2:25am, Reynolds arrived at the scene in reference/response to a disturbance call. Upon Reynolds' arrival, both Hardaway and Johns were in contact with Calvin Wilks, Jr. in the door way of 354 Hospital Drive. Reynolds positioned himself on the landing of the stairway of the two-story complex.

20.     At that time and place, no sounds of a disturbance could be heard coming

from the residence.

21.    Hardaway knocked on the front door 3 times before a black male, later identified as Calvin Wilks, Jr., wearing only boxers at the time, answered the front door. No other individuals were visible inside the residence. Calvin Wilks, Jr. stated nobody was in the residence with him and when Hardaway asked if the officers could step inside,  Calvin Wilks, Jr. advised "no, but I'll come out to you".  Hardaway advised Calvin Wilks, Jr. "whatever works for him," at which time Calvin Wilks, Jr. closed and immediately locked the door to the residence.

22.    After the passage of a few minutes, Calvin Wilks, Jr. returned to the front door and opened the front door, where he again encountered Hardaway in the doorway, and stated "I ain't got nothing sir, for real, I ain't got nothing," and began to close the front door.

23.    Hardaway put his hand against the door and advised Calvin Wilks, Jr. to "hold on." Calvin Wilks, Jr. began to push on the door, attempting to close the door, advising Hardaway "you are not coming into my house".

24.    Hardaway placed his left foot inside the door frame to prevent Calvin Wilks, Jr. from being able to secure the door closed.

25.    Calvin Wilks, Jr. began to repeatedly and over the course a couple of minutes attempt to close the door, but was unable to do so due to the placement of

Hardaway's foot inside of the door frame.

26.    Calvin Wilks, Jr. repeatedly told Hardaway to "move his foot."

27.    Calvin Wilks, Jr. told Hardaway to "you cannot come in this house."

28.    Calvin Wilks, Jr. told Hardaway to "get out of this house."

29.    Hardaway told Calvin Wilks, Jr. that neither he or his fellow officers would come into his residence.

30.    Hardaway asked Calvin Wilks, Jr. if he wanted Hardaway to leave, to which Calvin Wilks, Jr. replied "yes."

31.    At which time, Hardaway informed Calvin Wilks, Jr. that if he wanted Hardaway to go away then he needed to talk to him. Calvin Wilks, Jr. stated at that time that she, later determined to be Amber Robertson, is right down there (pointing to the parking lot). Calvin Wilks, Jr. advised Amber was in a gray car in the parking lot and not in his residence.

32.    Calvin Wilks, Jr. continuously tried to slam the door shut, but was continually prevented from doing so due to the placement of Hardaway's foot in the door frame. Hardaway informed Calvin Wilks, Jr. until he was able to determine no criminal activity occurred he would not be moving his foot from the doorway.

33.    Calvin Wilks, Jr., holding his cell phone, threatened to call the Sheriff if Hardaway would not remove his foot from the door frame.

34.   At this point, the Defendants, specifically including, but not limited to Hardaway, made a decision to enter Calvin Wilks, Jr.'s residence and detain him.

35.   At all times material hereto, Calvin Wilks, Jr. appeared to be under the influence of narcotics to all Defendants present at the scene.

36.   Hardaway, Johns, and Reynold's entered the residence.

37.   As the Defendant's entered the residence, Calvin Wilks, Jr. became afraid for his safety.

38.   At this point, Calvin Wilks, Jr. was violently taken to the ground by the Defendants Hardaway and Johns. Further, Calvin Wilks, Jr.'s face was ground into floor, tearing his skin.

39.   Terrified by Defendants' sudden physical aggression, Calvin Wilks, Jr. started screaming.

40.   Reynolds commenced to "clear the residence" in order to check for any threats or anyone needed assistance, with negative results.

41.   At this point, Hardaway and Johns began placing Calvin Wilks, Jr. in mechanical (both wrist and ankle) restraints on the floor in a prone position.

42.   At this point, Johns, using his department-issued taser, conducted approximately five (5) "dry" or "drive" stuns to Mr. Wilks, to areas including Calvin Wilks, Jr.'s lower back area, his left buttocks area and his groin area. Johns

sadistically shocked Calvin Wilks, Jr., delivering approximately 50,000 volts of electricity five times with sustained shocks from the taser, causing Calvin Wilks, Jr.'s body to painfully convulse.

43.     After "clearing" the apartment, and locating no other individuals inside, Reynolds stood by and assisted Johns and Hardaway in restraining Calvin Wilks, Jr., saying nothing, while Calvin Wilks, Jr. was tased approximately four (4) times by Johns. Further, Reynolds did not take any corrective action.

44.     Due to what Defendants determined to be Calvin Wilks, Jr. having a possible narcotic reaction and due to his shallow breathing, EMS and Fire were notified to respond to the scene.

45.     While on scene, Calvin Wilks, Jr. stopped breathing and CPR was administered by EMS and Fire. Calvin Wilks, Jr. was transported to North Okaloosa Medical Center, where was pronounced dead the following day (October 15, 2021).

46.     Calvin Wilks, Jr.'s cause of death was determined to by the result of cardiac dysrhythmia following physical exertion, prone restraint, and deployment of electroshock neuromuscular incapacitation device.

47.     No charges were brought against Calvin Wilks, Jr. in connection with this incident.

48.     As a direct result of the unwarranted attack on Calvin Wilks, Jr. as

described above, Defendants caused Calvin Wilks, Jr. to suffer the following injuries and damages, which include, but are not limited to:

(a)   abrasions, lacerations and scarring over the head and face;

(b)   tremendous pain and suffering as a result of the acts of Defendants Hardaway, Reynolds and Johns;

(c)   severe emotional distress;

(d)   cardiac dysrhythmia;

(e)   difficulty breathing; and

(f)   death.

## COUNT I
## CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. § 1983
## INDIVIDUAL CAPACITY UNLAWFUL ARREST CLAIM
**(against Defendants Hardaway, Johns, Reynolds, and McCosker)**

49.   Plaintiff realleges paragraphs 1 through 48 as if fully set forth herein.

50.   At all times material hereto, Defendants Hardaway, Johns and Reynolds had a legal duty not to  detain citizens without a well-founded and articulable suspicion of criminal activity, to seize or to arrest citizens without probable cause that they have committed a crime.

51.   On or about October 14, 2021, Defendants Hardaway, Johns and Reynolds intentionally detained Calvin Wilks, Jr. without a well-founded and

articulable suspicion of criminal activity, and seized Calvin Wilks, Jr. without probable cause or arguable probable cause.

52.   Charges were not brought by Defendants against Calvin Wilks, Jr.

53.   By his actions, Defendants Hardaway, Johns and Reynolds deprived Calvin Wilks, Jr. of the clearly-established right to be free from detention without a well-founded and articulable suspicion of criminal activity and arrest without probable cause, in violation of Calvin Wilks, Jr.'s clearly-established rights under the Fourth and Fourteenth Amendments to the U. S. Constitution.

54.   As a direct, proximate and foreseeable result of Defendants Hardaway, Johns and Reynolds' actions, Calvin Wilks, Jr. has suffered an unlawful detention.

55.   McCosker, in his supervisory (individual) capacity established customs, policies and practices that allowed for the other individual defendants to detain persons such as Plaintiff's decedent without a well-founded and articulable suspicion of criminal activity and arrest without probable cause, and failed to provide supervision of other individual defendants despite the knowledge of a need to do so, including providing proper training for such LEO conduct.

56.   As a direct and proximate result of the aforementioned constitutional violations, Plaintiff has suffered compensatory damages, including, but not limited

to: catastrophic bodily harm; pain and suffering; death; lost earnings, loss of future earning capacity, and all other compensatory damages.

WHEREFORE, Plaintiff prays that this Honorable Court grant the following relief on his civil rights claim brought pursuant to 42 U.S.C. §§ 1983 and 1988:

A. Judgment for compensatory damages against Defendants Hardaway, Johns, Reynolds and McCosker;

B. Judgment for punitive damages against Defendants Hardaway, Johns, Reynolds and McCosker;

C. Judgment for attorney's fees pursuant to 42 U.S.C. § 1988, together with the costs and expenses of this civil rights action;

D. Judgment for pre-judgment interest on all economic losses, and pre-judgment interest on attorney's fees for delay in payment;

E. A trial by jury on all issues so triable; and

F. Such other and further relief that this Court may deem just, proper and appropriate.


**COUNT II**
**CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. § 1983**
**INDIVIDUAL CAPACITY EXCESSIVE FORCE CLAIMS**
**(against Defendants Hardaway & Reynolds)**

14

57.     Plaintiff realleges paragraphs 1 through 48 as if fully set forth herein.

58.     At all times material hereto, Defendants Hardaway and Reynolds had a legal duty to use only that amount and degree of force in the apprehension of suspects as was reasonable under the circumstances, for proper and efficient arrest, supervision and control of such persons.

59.     Defendants Hardaway and Reynolds used excessive force on Calvin Wilks, Jr. without provocation or cause.  Calvin Wilks, Jr. was not attempting to flee from Defendants, and was not threatening either Officer in any manner. Nevertheless, Defendants Hardaway and Reynolds used an excessive amount of force on Calvin Wilks, Jr.

60.     Defendant Reynolds took no corrective actions whatsoever in response to the actions of Defendants Hardaway and/or Reynolds.

61.     Assuming that Defendants Hardaway and/or Reynolds had any cause to take Calvin Wilks, Jr. into custody, these Defendants could have easily done so without causing him any harm, as Calvin Wilks, Jr.

62.     By their actions, Defendants Hardaway and Reynolds deprived Calvin Wilks, Jr. of the clearly-established right to be free from force which was excessive under the circumstances, in violation of Calvin Wilks, Jr.'s clearly-established rights under the Fourth and Fourteenth Amendments to the U. S.

15

Constitution.

63.     As a direct, proximate and foreseeable result of Defendants Hardaway and Reynolds' actions, Plaintiff has suffered compensatory damages, including, but not limited to: catastrophic bodily harm; pain and suffering; death; lost earnings, loss of future earning capacity, and all other compensatory damages.

WHEREFORE, Plaintiff prays that this Honorable Court grant the following relief on his civil rights claim brought pursuant to 42 U.S.C. §§ 1983 and 1988:

A. Judgment for compensatory damages against Defendants Hardaway and Reynolds;

B. Judgment for punitive damages against Defendants Hardaway and Reynolds;

C. Judgment for attorney's fees pursuant to 42 U.S.C. § 1988, together with the costs and expenses of this civil rights action;

D. Judgment for pre-judgment interest on all economic losses, and pre-judgment interest on attorney's fees for delay in payment;

E. A trial by jury on all issues so triable; and

F. Such other and further relief that this Court may deem just, proper and appropriate.

## COUNT III
## CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. § 1983
## INDIVIDUAL CAPACITY EXCESSIVE FORCE CLAIM
### (against Defendant Johns and McCosker)

64.    Plaintiff realleges paragraphs 1 through 48 as if fully set forth herein.

65.    At all times material hereto, Defendant Johns had a legal duty to use only that amount and degree of force in the apprehension of suspects as was reasonable under the circumstances, for proper and efficient arrest, supervision and control of such persons.

66.    Defendant Johns repeatedly shocked Calvin Wilks, Jr. with his taser without any cause, and without the legal right to use any force against him, as there were no lawful grounds for Defendant Johns to seize Calvin Wilks, Jr. at all.

67.    Even assuming that Defendant Johns had any cause to take Calvin Wilks, Jr. into custody, the force he used was grossly excessive, as he could have easily seized Calvin Wilks, Jr. without causing him any harm. Calvin Wilks, Jr. posed no threat to Johns, and Johns easily could have taken him into custody without using any form of weapon.

68.    The repeated tasing of Calvin Wilks, Jr. by Defendant Johns was a blatant use of excessive force.

69.    By his actions, Defendant Johns deprived Calvin Wilks, Jr. of the

clearly established right to be free from force which was excessive under the circumstances, in violation of Calvin Wilks, Jr.'s clearly-established rights under the Fourth and Fourteenth Amendments to the U. S. Constitution.

70.    McCosker, in his supervisory (individual) capacity established policies and practices that allowed for the other individual defendants to use excessive force against persons, including Plaintiff's Decedent, Calvin Wilks, Jr., despite the lack of any need nor right to use any force whatsoever, and failed to provide any supervision of the other individual defendants despite the knowledge of the need to do so including the proper training for such improper use of force conduct.

71.    As a direct, proximate and foreseeable result of Defendant Johns' actions, Plaintiff has suffered compensatory damages, including, but not limited to: catastrophic bodily harm; pain and suffering; death; lost earnings, loss of future earning capacity, and all other compensatory damages.

WHEREFORE, Plaintiff prays that this Honorable Court grant the following relief on his civil rights claim brought pursuant to 42 U.S.C. §§ 1983 and 1988:

A.    Judgment for compensatory damages against Defendant Johns and McCosker;

B. Judgment for punitive damages against Defendant Johns and McCosker;

18

C.  Judgment for attorney's fees pursuant to 42 U.S.C. § 1988, together with the costs and expenses of this civil rights action;

D.  Judgment for pre-judgment interest on all economic losses, including judgment for damage due to the lack of insurability of Plaintiff; and pre-judgment interest on attorney's fees for delay in payment;

E.  A trial by jury on all issues so triable; and

F.  Such other and further relief that this Court may deem just, proper and appropriate.

## COUNT IV
## STATE LAW CLAIM FOR BATTERY
**(against Defendants Hardaway, Johns, Reynolds and City of Crestview)**

72.  Plaintiff realleges paragraphs 1 through 48 as though fully set forth herein.

73.  This is a cause of action, under the common law of the State of Florida, for a civil battery.  Such claims arise from a common nucleus of operative facts with violation(s) of 42 U.S.C. § 1983 as set forth above.

74.  The conduct of Defendants Hardaway, Johns and/or Reynolds was intentional, but was not willful, wanton or malicious.

75.  Plaintiff has complied with all conditions precedent to bringing this

action.

76.     The conduct of Defendants Hardaway, Johns and Reynolds was committed within the course and scope of their employment as Officers for Defendant CITY OF CRESTVIEW, FLORIDA.

77.     The conduct of Defendants Hardaway, Johns and Reynolds constituted a harmful and/or offensive contact on the person of Plaintiff.

78.     Defendant CITY OF CRESTVIEW, FLORIDA is responsible for the battery committed by Defendants Hardaway, Johns and/or Reynolds upon the person of Plaintiff, in that the civil battery was intentional, but not malicious, and was committed within the course and scope of Defendants Hardaway, Johns and Reynolds' employment with Defendant CITY OF CRESTVIEW, FLORIDA, such that the doctrine of *respondeat superior* applies to this action.

79.     In the alternative to the allegations contained in paragraphs 71 through 78, the conduct of Defendants Hardaway, Johns and/or Reynolds was intentional, malicious, wanton and willful, to the detriment of the health, safety and welfare of Calvin Wilks, Jr.

80.     As a direct and proximate result of the battery alleged above, Plaintiff has suffered compensatory damages, including, but not limited to: catastrophic bodily harm; pain and suffering; death; and other compensatory damages.

WHEREFORE, Plaintiff prays for judgment for compensatory damages against Defendant CITY OF CRESTVIEW, FLORIDA, together with costs of this action, pre-judgment interest on all economic losses, and a trial by jury on all issues so triable.

And WHEREFORE, in the alternative, Plaintiff prays for compensatory and punitive damages against Defendants Hardaway, Johns and Reynolds, together with pre-judgment interest on all economic losses, costs of this action, and a trial by jury on all issues so triable.

## COUNT V
## STATE LAW CLAIM FOR FALSE ARREST
**(against Defendants Hardaway, Johns, Reynolds and City of Crestview, Florida)**

81.     Plaintiff realleges paragraphs 1 through 48 as though fully set forth herein.

82.     This is a cause of action, under the common law of the State of Florida, for a false arrest.  Such claims arise from a common nucleus of operative facts with violation(s) of 42 U.S.C. § 1983 as set forth above.

83.     The conduct of Defendants Hardaway, Johns and/or Reynolds was intentional, but was not willful, wanton or malicious.

84.     Plaintiff has complied with all conditions precedent to bringing this action.

85.     The conduct of Defendants Hardaway, Johns and Reynolds was committed within the course and scope of each such Defendants' employment as Officers for Defendant CITY OF CRESVIEW, FLORIDA.

86.     The conduct of Defendants Hardaway, Johns and/or Reynolds constituted a false arrest of Calvin Wilks, Jr., as the detention was made without probable cause or even arguable probable cause.

87.     Defendant CITY OF CRESTVIEW, FLORIDA is responsible for the false arrest of Calvin Wilks, Jr. by Defendants Hardaway, Johns and/or Reynolds, in that the false arrest was intentional, but not malicious, and was committed within the course and scope of Defendants Hardaway, Johns and Reynolds' employment with Defendant CITY OF CRESTVIEW, FLORIDA, such that the doctrine of *respondeat superior* applies to this action.

88.     In the alternative to the allegations contained in paragraphs 82 through 87, the conduct of Defendants Hardaway, Johns and Reynolds was intentional, malicious, wanton and willful, to the detriment of the health, safety and welfare of Calvin Wilks, Jr.

89.     As a direct and proximate result of the false arrest alleged above,

22

Calvin Wilks, Jr. suffered an unlawful detention; and  Plaintiff has suffered compensatory damages, including, but not limited to: catastrophic bodily harm; pain and suffering; death; and other compensatory damages.

WHEREFORE, Plaintiff prays for judgment for compensatory damages against Defendant CITY OF CRESTVIEW, FLORIDA, together with costs of this action, pre-judgment interest on all economic losses, and a trial by jury on all issues so triable.

And WHEREFORE, in the alternative, Plaintiff prays for compensatory and punitive damages against Defendants Hardaway, Johns and Reynolds, together with pre-judgment interest on all economic losses, costs of this action, and a trial by jury on all issues so triable.

### COUNT VI
### CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. § 1983
### OFFICIAL CAPACITY FALSE ARREST AND DETENTION AND
### EXCESSIVE FORCE CLAIM (FIRST *MONELL* CLAIM)
### (against Defendant City of Crestview, Florida)

90.     Plaintiff realleges paragraphs 1 through 48 as if fully set forth herein.

91.     At all times material hereto, Defendant CITY OF CRESTVIEW, FLORIDA's had a duty to adopt and implement rules and procedures to ensure that its Officers used a proper procedure to detain or arrest persons and use a reasonable amount and degree of force in the apprehension of suspects.

92.    Defendant CITY OF CRESTVIEW, FLORIDA's failure to adopt and implement adequate policies regarding its Officers' false arrest and improper use of force, resulted in the blatant false arrest and improper use of excessive force by Defendants Hardaway, Reynolds and/or Johns against Calvin Wilks, Jr. as described in paragraphs 14 through 47, 57 through 63, and 64 through 71.

93.    At all times material hereto, CITY OF CRESTVIEW, FLORIDA, its agents and employees, knew, and it was foreseeable, that persons being detained by his Officers might be subjected to use of force through his Officers' use of the taser.

94.    At all times material hereto, CITY OF CRESTVIEW, FLORIDA, its agents and supervisors including Defendant MCCOSKER knew, and it was foreseeable, that an adequate policy for the proper arrest and use of force was necessary in order to avoid repeated improper arrests and use of excessive force by his Officers in such circumstances.

95.    At all times material, CITY OF CRESTVIEW, FLORIDA, its agents and supervisors including Defendant MCCOSKER were aware that the failure to establish a custom, policy and practice relating to the tracking and auditing of Officers' use of the taser and the disciplining of Officers who use excessive force would resulting in serious injury to members of the general public.

96. At all times material, Defendant MCCOSKER, who was one the City of Crestview's policy makers, was deliberately indifferent to the known probability that instances of excessive force through use of the taser would occur, such as in the case of Calvin Wilks, Jr., by failing or refusing to establish a use of force policy which provides for adequate tracking of taser usage by Officers.

97. Defendant CITY OF CRESTVIEW had a policy, practice or custom of failing to adequately supervise and discipline Officers.

98. At all times material hereto, CITY OF CRESTVIEW, FLORIDA, its agents and supervisors including Defendant MCCOSKER knew, and it was foreseeable, that a policy of adequately supervising and auditing the uses of force by Officers was necessary in order to avoid repeated use of excessive force by Officers.

99. At all times material, CITY OF CRESTVIEW, FLORIDA was aware that the failure to establish a policy of adequately supervising and auditing the uses of force by Officers would result in repeated instances of excessive force resulting in serious injury.

100. At all times material, Defendant MCCOSKER, who was one of the Defendant CITY OF CRESTVIEW, FLORIDA's policy makers was deliberately indifferent to the known probability that instances of excessive force by Officers

would occur, such as in the case of Calvin Wilks, Jr., by failing or refusing to establish a policy of adequately supervising and auditing the uses of force by Officers.

101. As a direct, proximate and foreseeable result of Defendant CITY OF CRESVIEW, FLORIDA's policies, customs and practices, Plaintiff has suffered compensatory damages, including, but not limited to: catastrophic bodily harm; pain and suffering; death; and other compensatory damages.

102. Defendant CITY OF CRESTVIEW, FLORIDA acted with deliberate indifference in causing the aforesaid constitutional violations by Defendants Hardaway, Reynolds, Johns, and McCosker to occur, as follows:

(a) Defendant MCCOSKER, in his supervisory and policy making capacities, failed to adequately monitor and evaluate the performance of his Officers, including Defendants Hardaway, Reynolds and/or Johns, including their instances of false arrest and use of excessive force and unreasonable applications of force, in deliberate indifference and reckless disregard to persons in custody, including Calvin Wilks, Jr;

(b) Defendant MCCOSKER, in his supervisory and policy making capacities, failed to adequately supervise his Officers, in deliberate indifference and reckless disregard to persons who came into contact

with them, including Calvin Wilks, Jr;

(c) Defendant MCCOSKER, in his supervisory and policy making capacities, had a policy, custom and practice of allowing his Officers, including Defendants Hardaway, Reynolds and/or Johns, to falsely arrest individuals and use excessive and/or unreasonable force without fear of discipline, thereby creating an atmosphere where such behavior was accepted, approved and ratified, in reckless disregard and deliberate indifference to the health and welfare of persons in his custody, and the custody of Defendant CITY OF CRESTVIEW, FLORIDA including Calvin Wilks, Jr.

103. The aforementioned actions committed by Defendants Hardaway, Reynolds and/or Johns were proximately caused by the de facto policies, customs, and practices of Defendant CITY OF CRESTVIEW, FLORIDA, the failure to establish proper policies, customs and practices, its failure to adequately supervise and monitor its Officers and its ratification of Officers' improper arrests and use of excessive force, as alleged in paragraphs 14 through 48, 57 through 63, and 64 through 71.

104. The aforementioned policies, customs, practices and omissions of Defendant CITY OF CRESTVIEW, FLORIDA, alleged herein, were the underlying

27

cause of Plaintiff's injuries and damages.

WHEREFORE, Plaintiff prays that this Honorable Court grant the following relief on his civil rights claim brought pursuant to 42 U.S.C. §§ 1983 and 1988:

A.   Judgment for compensatory damages against Defendant CITY OF CRESTVIEW, FLORIDA;

B. Judgment for attorney's fees pursuant to 42 U.S.C. § 1988, together with the costs and expenses of this civil rights action;

C. Judgment for pre-judgment interest on all economic losses, and pre-judgment interest on attorney's fees for delay in payment;

D. A trial by jury on all issues so triable; and

E. Such other and further relief that this Court may deem just, proper and appropriate.

## COUNT VII
## OFFICIAL CAPACITY (SECOND *MONELL*) CLAIM UNDER 42 U.S.C. § 1983
### (against City of Crestview, Florida)

102.   Plaintiff realleges paragraphs 1 through 47 as though fully set forth herein.

103.   Count VII is also alleged against Defendant CITY OF CRESTVIEW, FLORIDA.

104.   Cities or municipalities, including, but not limited to Crestview, Florida, are liable for constitutional violations under 42 U.S.C. § 1983 when execution of its official policy or custom deprives an individual of its rights protected under the Constitution.

105.   Such City liability exists where a city fails to properly train, supervise, and discipline its employees amounting in a deliberate indifference to one's constitutional rights.

106.   At all times relevant, Defendant CITY OF CRESTVIEW, FLORIDA had a duty to properly train, supervise, and discipline its Police Officers, specifically including, but not limited to Defendants Hardaway, Reynolds and Johns.

107.   Defendant CITY OF CRESTVIEW, FLORIDA breached that duty, in part, by improperly training, authorizing, encouraging or directing its Police Officers, specifically including, but not limited to, Defendant Johns, on Taser policies, as further described herein.

108.   On and for some time prior to October 14, 2021, Defendants Hardaway, Reynolds and Johns, individually, and as CITY OF CREVIEW, FLORIDA's Police Officers, deprived individuals including Plaintiff and Decedent of the rights and liberties secured to them by the Fourth and Fourteenth Amendments to the United States Constitution, in that said defendant CITY OF CRESTVIEW, FLORIDA and

its supervising and managerial employees, agents, and representatives, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, and of Plaintiff and Decedent in particular, and of persons in their class, situation and comparable position in particular, knowingly maintained, enforced and applied an officially recognized or de facto custom, policy, and practice of:

a) Of employing and retaining as Police Officers and other personnel, including Defendants Hardaway, Reynolds and Johns, agents and employees who at all times material herein knew or reasonably should have known that such persons had dangerous propensities for abusing their authority and for mistreating citizens, by failing to follow written City of Crestview Police Department's policies, including the proper use of an Electronic Control Device and other mechanisms of violent force, as well as for making unlawful and/or unreasonable detentions and arrests including but not limited to, both lawful and unlawful arrests and detentions, but accompanied by the use of excessive and deadly force;

b) Of inadequately supervising, training, controlling, assigning, and disciplining City Police Officers, and other personnel, including Defendants Hardaway, Reynolds and Johns, who Defendant CITY OF CRESTVIEW,

FLORIDA, its agents and supervisors, knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits, including the propensity for violence and the use of excessive force;

c) Of inadequately supervising, training, controlling, assigning, and disciplining City Police Officers, and other personnel, including Defendants Hardaway, Reynolds and Johns in responding to individuals who were under the influence of alcohol or narcotics - as CITY OF CRESTVIEW, FLORIDA knew or should have known, and it was foreseeable, that persons being detained by its Police Officers may include individuals visibly impaired and/or under the influence of alcohol and/or narcotic substances. Moreover, that the use of Tasers by its Police Officers on individuals visibly impaired and/or under the influence of narcotic substances the likelihood of such individuals suffering serious injuries or death was increased;

d) By maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the intentional misconduct by Defendants Hardaway, Reynolds and Johns who were Police Officers of the City;

e) By failing to discipline  City Police Officers' conduct, including but not limited to, unlawful detention and excessive and deadly force;

31

f) By ratifying the intentional misconduct of Defendants Hardaway, Reynolds and Johns and other City Police Officers who are or were Police Officers of the City;

g) By having and maintaining an unconstitutional policy, custom and practice of detaining and arresting individuals without probable cause or reasonable suspicion, and using excessive force, including the improper use of an Electronic Control Device and deadly force, and inadequate training regarding these subjects - as CITY OF CRESTVIEW, FLORIDA knew or should have known, and it was foreseeable, that in the process of detaining an individual, its Police Officers might utilize Tasers to gain compliance and exert control over individuals. The policies, customs and practices of Defendant CITY OF CRESTVIEW, FLORIDA and ultimately, Defendants Hardaway, Reynolds and Johns were done with a deliberate indifference to individuals' safety and rights;

h) Alternatively, by failing to adopt and implement adequate policies regarding City's Police Officers who are or were Police Officers, of the City's use of force practices, including, but not limited to the use of Tasers, which resulted in the blatant use of excessive force by City Police Officer, Johns, against Calvin Wilks, Jr., as described in paragraphs 64 through 71.

i) By failing to adequately train Defendants Hardaway, Reynolds and Johns and other City Police Officers on the use of wrist and leg restraints;

j) By failing to adequately train Defendants Hardaway, Reynolds and Johns and other City Police Officers on the positioning of a restrained individual experiencing and/or exhibiting a serious medical need;

k) By failing to adequately train Defendants Hardaway, Reynolds and Johns and other City Police Officers on first-responder medical care;

l) By failing or refusing to establish a use of force policy for City Police Officers inclusive of Taser force that forbid such use unless it met the requirements justifying the use of deadly force; and

m) By failing to properly investigate claims of unlawful detention and excessive force by the City's Police Officers.

109.   Defendants Hardaway, Reynolds and Johns, individually and as Police Officers of the City, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above these defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the

constitutional rights of Decedent, Plaintiff, and other individuals similarly situated.

110.   At all times material hereto, the CITY OF CRESTVIEW, FLORIDA had such deficient use of force policies or directives in place for its Police Department/Police Officers, as to amount to no adequate policies or directives whatsoever, such that it delegated its policymaking authority to its individual police officers to employ whatever customary actions such individual officer deemed necessary as to detention and use of force.

111.   At all times material hereto, and in light of City of Crestview's Police Officers' customary and regular use of Tasers in apprehending persons, CITY OF CRESTVIEW, FLORIDA was or should have been aware that the failure to establish a custom, policy and practice relating to the use of Tasers against such persons and in such circumstances, as outlined above, would result in repeated instances of excessive force resulting in serious injury or death.

112.   CITY OF CRESTVIEW, FLORIDA, with deliberate indifference, delegated the final decision making authority as to whether to deploy a Taser against a suspect to the individual Police Officer - in this instance, Defendant Johns. As such, Defendant Johns acted as the final policy maker for CITY OF CRESTVIEW, FLORIDA when he chose to use his Taser against Calvin Wilks, Jr., and the CITY OF CRESTVIEW, FLORIDA is therefore liable for Defendant Johns' decision to use

Case 3:23-cv-09214-MCR-HTC   Document 1   Filed 05/02/23   Page 35 of 41

excessive force.

113.   The factual allegations set forth in paragraphs 57 through 63 and 64 through 71 were obvious and known to Defendant CITY OF CRESTVIEW, FLORIDA for a substantial period of time predating Calvin Wilks, Jr.'s death, yet Defendant CITY OF CRESTVIEW, FLORIDA had deliberately failed to adequately address the conditions described at all times material hereto.

114.   By virtue of the conduct of Defendant CITY OF CRESTVIEW, FLORIDA in perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, Defendants Hardaway, Reynolds and Johns, individually, and as Police Officers of the City, were allowed to act and ultimately acted with an intentional, reckless, and callous disregard for the life of Decedent. Each of their actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities, and causally linked to the aforesaid customs, policies, practices, and other conduct of and by Defendant CITY OF CRESTVIEW, FLORIDA, its agents, supervisory officials, and policy-making employees.

115.   Furthermore, the policies, practices, and customs implemented and maintained and tolerated by Defendant CITY OF CRESTIVEW, FLORIDA, were the moving force in the resulting actions of Defendants Hardaway, Reynolds and Johns,

individually, and as Police Officers of the City, and thus such conduct of and by the City of Crestview was the direct and proximate cause of Calvin Wilks, Jr.'s death, and was affirmatively linked to and was significantly influential or the moving force behind the injuries and death of Decedent and Plaintiff.

116.   These widespread practices identified in the above paragraphs relative to Count VII were allowed to flourish—and become so well settled as to constitute *de facto* policy of the City of Crestview and its Police Department—because governmental policymakers and authority over the same, namely, Defendant CITY OF CRESTVIEW, FLORIDA, exhibited deliberate indifference to the problem, thereby effectively ratifying the unconstitutional conduct of the individual Defendants.

117.   CITY OF CRESTVIEW, FLORIDA, at all times material hereto, ratified the actions taken and not taken by the City of Crestview's Police Officers, specifically including, but not limited to, the intentional misconduct and like actions of Defendants Hardaway, Reynolds and Johns, individually, as further described herein.

118.   As a direct, proximate and foreseeable result of Defendant CITY OF CRESTVIEW, FLORIDA's customs, policies and practices, Calvin Wilks, Jr. suffered fatal injuries.

36

119.   As a direct, proximate and foreseeable result of the acts and omissions of Defendant CITY OF CRESTVIEW, FLORIDA, Plaintiff has suffered compensatory damages, prior to and resulting in his death, including, but not limited to: catastrophic bodily harm; pain and suffering; death; and other compensatory damages.

WHEREFORE, Plaintiff prays this Court grant the following relief on his civil rights claim brought pursuant to 42 U.S.C. §§ 1983 and 1988 against Defendant CITY OF CRESTVIEW, FLORIDA:

a.   Judgment for compensatory damages against CITY OF CRESTVIEW, FLORIDA, in its official capacity;

b.   Judgment for attorney's fees pursuant to 42 U.S.C. § 1988, together with the costs and expenses of this civil rights action, against CITY OF CRESTVIEW, FLORIDA, in its official capacity;

c.   Judgment for pre-judgment interest on all economic losses and on attorney's fees for delay in payment, against CITY OF CRESTVIEW, FLORIDA, in its official capacity;

d.   A trial by jury on all issues so triable; and

e.   Such other and further relief that this Court may deem just, proper

and appropriate against CITY OF CRESTVIEW, FLORIDA, in its official capacity.

## COUNT VIII
## STATE LAW CLAIM FOR WRONGFUL DEATH
**(against Defendants Hardaway, Reynolds, Johns & City of Crestview, Florida)**

120.   Plaintiff re-alleges paragraphs 1 through 47 as if fully set forth herein.

121.   Count VIII is alleged against Defendants Hardaway, Reynolds and Johns, pursuant to Fla. Stat. §§ 768.16-768.26, Florida's "Wrongful Death Act."

122.   As described more fully in the preceding paragraphs, Defendants Hardaway, Reynolds and Johns' acts and omissions resulted in Calvin Wilks, Jr.'s wrongful death.

123.   As described more fully in the preceding paragraphs, Defendants Hardaway, Reynolds and Johns' acts and omissions were the direct and proximate cause of Calvin Wilks, Jr.'s death and the injuries to his survivors and damages suffered by his Estate.

124.   Defendants Hardaway, Reynolds and Johns' above-described intentional misconduct; or in the alternative, intentional and malicious, wanton and reckless conduct; or in the second alternative, negligent actions and omissions; were the cause of the death of Calvin Wilks, Jr. and in the contravention of Calvin Wilks, Jr.'s rights.

125.  The conduct of Defendants Hardaway, Reynolds and Johns' was at all times material hereto, made under color of state or local law.

126.  As a direct, proximate and foreseeable result of the intentional, unjustified and unconstitutional conduct, or in the alternative, negligent conduct, of Defendants Hardaway, Reynolds and Johns, Calvin Wilks, Jr. experienced pain, suffering, emotional distress, injury, and ultimately, death.

127.  At all times material hereto, the intentional or in the alternative, the negligent conduct, of Defendants Hardaway, Reynolds, and Johns, occurred within the course and scope of their employment within the Defendant, CITY OF CRESTVIEW, FLORIDA.  Thus, under the doctrine respondeat superior, Defendant CITY OF CRESTVIEW, FLORIDA is responsible for any such intentional, non-malicious or negligent conduct.

128.  As a direct, proximate and foreseeable result of the acts and omissions of each such respective individual Defendant, those Defendants Hardaway, Reynolds and Johns, Plaintiff has suffered damages, including, but not limited to: catastrophic bodily harm; pain and suffering; death; and other compensatory damages.

129.  As described more fully in the preceding paragraphs, Defendant CITY OF CRESTVIEW, FLORIDA, breached its duty to exercise reasonable care in safe-guarding its residents, including specifically, but not limited to, Calvin Wilks,

Jr., by failing to follow develop protocols and procedures designed to keep such residents reasonable safe from the use of unlawful detention and excessive force by its Police Officers, including specifically, but not limited to, Defendants Hardaway, Reynolds and Johns, and/or alternatively by failing to follow existing protocols and procedures designed to do the same. Such independent fault of Defendant CITY OF CRESTVIEW, FLORIDA, makes such Defendant liable for the improper conduct of its agents and employees including the individual Defendants named herein, and separate from and in addition to, the doctrine of respondeat superior.

130.   As a direct, proximate and foreseeable result of the acts and omissions of each such respective individual Defendant, and possibly unknown agents and employees of Defendant CITY OF CRESTVIEW, FLORIDA, Plaintiff has suffered damages, including, but not limited to: catastrophic bodily harm; pain and suffering; death; and all other compensatory damages.

WHEREFORE, in light of the foregoing, Plaintiff demands judgment, for compensatory and punitive damages against individual Defendants Hardaway, Reynolds and/or Johns; for compensatory damages against Defendant CITY OF CRESTVIEW, FLORIDA; and against all such Defendants for pre-and post-judgment interest on all economic losses; where authorized costs; a trial by jury on all issues so triable; plus any other relief the Court deems just and proper.

DATED this <u>2nd</u> day of May, 2023.

<div style="margin-left: 40%;">

*/s/ Daniel J. Finelli*
Daniel J. Finelli
Florida Bar No.: 101084
d.finelli@solowaylawfirm.com
Daniel M. Soloway
Florida Bar No.: 508942
d.soloway@solowaylawfirm.com
Soloway Law Firm
1013 Airport Blvd.
Pensacola, FL 32504
(850) 471-3300 (T)
(850) 471-3392 (F)
*/s/ Gillis Edward Powell*
Gillis Edward Powell
Florida Bar No.: 183427
gillpowell@powelllawfirm.com
Powell Law Firm
422 N Main St
P.O. Box 277
Crestview, FL 32536-0277
Phone: 850-682-2757
Fax: 850-664-6175
Attorneys for Plaintiff

</div>

41